## Bierbaum v. King

*George W. Teets* and *Black & Davison*, for plaintiff.
*Daniel W. Long* and *Wingerd & Long*, for defendant.

DEPUY, P. J., November 20, 1963.—Plaintiff on May 9, 1963, filed his complaint alleging that about February 5, 1963, he was the owner and possessor of a certain Plymouth station wagon, that about 7:10 p.m. that day he was operating his vehicle in the right hand lane going in a northerly direction on a certain traffic route in this county, that at the same time and place defendant was operating a Chevrolet sedan in the same direction upon the same highway, that as plaintiff was making a left turn onto a private road from the said highway, defendant operating his Chevrolet in a careless manner, attempted to overtake plaintiff's vehicle on the left and that defendant thus caused the Chevrolet to collide with plaintiff's vehicle resulting in certain damage. Specifications of negligence are enumerated and damages of $198.64 are averred.

On October 24, 1963, plaintiff served upon defendant interrogatories to the number of 85, many having a number of subquestions, covering 14 pages in all. The interrogatories sought answers concerning defendant's history as a motor vehicle operator, the nature, antiquity and other data about his operator's license, his

previous license suspensions in any state, requested a full description of the vehicle defendant was driving at the time, an outline of his driving experience previous to the accident, his previous acquaintance with the highway on which the accident occurred, the extent of his previous travel upon said highway, the condition of his eyesight, the intended beginning, end, the expected time of arrival in the trip defendant was then making, the stops made previous to the collision, a description in detail of the place where the accident happened, the actions of plaintiff and of defendant at the time of the accident, the extent, if any, to which defendant's visibility was impaired at the time of the accident by the following: a curve, a hump, a depression, an incline, a downgrade, an embankment, signboards, buildings, vehicles, machinery, people, other animals, smoke, dust, materials in the air, rain or other precipitation, vegetation, and light conditions. The remaining 24 of the questions, with their numerous subquestions, we don't attempt to summarize here.

On July 29, 1963, defendant filed "Objections to Interrogatories of Plaintiff", asserting that the interrogatories violate Pa. R. C. P. 4011(a), (b), (c) and (e). These provisions state:

"No discovery or inspection shall be permitted which

"(a) is sought in bad faith;

"(b) causes unreasonable annoyance, embarrassment, expense or oppression to the deponent or any person or party;

"(c) relates to matter which is privileged or would require the disclosure of any secret process, development or research; . . .

"(e) would require the making of an unreasonable investigation by the deponent or any party or witness;" . . .

Defendant's exceptions in sum object that:

1. Many of the questions relate to irrelevant and incompetent matters under the pleadings;

2. As to many of the questions, plaintiff would have the same knowledge as defendant;

3. Some of the questions deal with matters admitted by failure of defendant to file an answer to the complaint;

4. The questions are unreasonable because the detail required would necessitate an extensive investigation by defendant, a trip to the scene of the accident to make measurements, and would be inordinately time consuming, especially considering the small amount of the claim;

5. The interrogatories are filed in bad faith and to cause unreasonable annoyance, expense and oppression to defendant;

6. To permit use of interrogatories in the manner here proposed is beyond the intent of the discovery system in the Rules of Civil Procedure and if permitted would tend to bring the whole system into disrepute and increase the cost of litigation in a simple matter such as the present, rather than expediting or economizing in any way in the administration of civil justice.

In event the court should dismiss defendant's global objection to the interrogatories as filed, defendant desires the opportunity of filing specific objections with regard to the individual questions on the ground of incompetency or irrelevancy.

After argument and submission of briefs the matter is ripe for determination. What we have before us is not an objection pointed to individual questions on any ground of incompetence, but objection to plaintiff's interrogatories in their entirety as being so grossly extensive and burdensome in the amount of time and effort required of defendant to comply with them as to

nullify the aim of the rules which was to economize, simplify and expedite the process of civil litigation. Defendant contends his objection is the more justifiable when taken in relation to the amount of damages sought in the suit, namely $198.64.

Defendant emphasizes that this case under our court procedure, having been at issue by June 1, 1963, could easily have been placed on the list for trial beginning September 9, 1963, or for the November term beginning November 25, 1963. All our cases are currently tried as listed at each term. Thus defendant argues the matter would by now have been disposed of instead of facing the expense, delay and jousting involved in filing and answering exhaustive interrogatories.

Plaintiff's argument rests upon Pa. R. C. P. 4005, related to interrogatories, and Pa. R. C. P. 4007, related to depositions, and asserts that the scope of inquiry authorized under either of the sections is the same: 4 Goodrich-Amram 66; 5 Standard Pa. Pract. 27.

Plaintiff cites 5 Standard Pa. Pract. 30, and 5 Anderson Pa. Civ. Pract., 1962 pocket part p. 41, for the proposition that under rule 4005 the fact that interrogatories are numerous in a given case is no obstacle to their use. Plaintiff cites a number of lower court decisions holding that: 48 interrogatories concerning a motor vehicle accident should be answered: Altschuler v. Vance, 74 Montg. 204 (1957) ; 57 interrogatories are approved out of 65 requested: Drawbaugh v. Pennsylvania Power & Light Company, 84 D. & C. 209 (1952) ; 43 interrogatories were allowed: Witlin v. Pennsylvania R. R. Co., 18 D. & C. 2d 176 (1959).

Plaintiff argues he should not be criticized for submitting numerous questions or numerous subquestions, because thus he has tried to make each question specific and hence easy to answer; that a plaintiff must be

extra cautious in order to cover each phase of the situation so that evasion by use of general and meaningless answers is made difficult.

Likewise plaintiff argues that the lawful area of inquiry is very wide, and hence the interrogatories cannot properly be dismissed by the court as irrelevant. He says that objections as to relevancy can be made to the court when the answers are offered at the trial. Plaintiff says the intention of the rules is to resolve all doubt in favor of the broadest inquiry, whether by discovery or interrogatory procedure, and cites cases thus holding.

Plaintiff also rejects defendant's argument that certain information sought is as well within the knowledge of plaintiff as of defendant, citing Barron and Holtzoff, Federal Practice & Procedure, Vol. 2A 300-301 and 5 Standard Pa. Pract. 13, 14; Klein v. Commonwealth, 9 D. & C. 2d 792 (1956).

Our major focus should be upon defendant's objections to the entirety of plaintiff's interrogatories on the ground of bad faith and that answering the interrogatories would be unreasonable, expensive and oppressive. Plaintiffs cites 4 Goodrich-Amram 204, 205, for the proposition that any resort to discovery, inspection or interrogatories is likely to be annoying, expensive and oppressive to the opposite party: 5 Standard Pa. Pract. 17. Admittedly the intention of the rules does not favor this type of objection against use of discovery, deposition or interrogatories.

Plaintiff relies on Dulaney, Admrx. v. Lutes, 37 Wash. Co. 169 (1957), where it was said that "Law suits are burdensome and expensive to litigants. When it is found necessary in order to have a fair, impartial, and thorough administration of justice, the modern rules of procedure require that all sources of information must be made available, regardless of expense or inconvenience to litigant resulting therefrom."

But of equal importance in giving effect to the basic principle at the foundation of the rules is that they not be administered with the effect of increasing rather than diminishing the delay, expense and burdensomeness of litigation. Admittedly a special rule cannot be made based on the facts of each individual case. At the same time the court would be flying from common sense if the basic factors admittedly at the bottom of the rules: efficiency, expedition, economy of effort and money were not used in seeking the correct analysis of this and other problems. Many of these new procedures of discovery are bound to have a greater efficiency and applicability in some courts than in others. The result in some cases may well depend on whether in the particular court long delays are encountered in bringing cases to trial and hence greater resort must be had to special measures that can lead to full disclosure and compromise of litigation *before* trial.

In the present case it seems utter foolishness to resort to exhaustive and time-consuming procedures when the whole claim is for $198.64, and under our practice could easily have been brought to trial and concluded long before now. It appears the preliminaries here are taking longer than the main show, and costing more. This could not possibly be the intent of the rules.

We ought not become so entangled in procedures as to lose track of practicality. The facts of the present case present the ultimate in simplicity. There is only one plaintiff and one defendant, no agent is involved. Neither of the parties is a corporation or organization having a number of members or agents where it is difficult to find out exactly what person was acting in the transaction which allegedly caused harm to plaintiff, a situation where pretrial procedures often prove efficacious.

What could be more simple than to bring to prompt trial this simple suit for a small amount of money involving one plaintiff and one defendant where each party has full knowledge of what is involved, and thus get the matter over with.

Goodrich-Amram, §4011(a) (1) is cited for the proposition that what is unreasonable under this rule is a matter entirely within the discretion of the court.

We think defendant's position is well taken that the employment of extensive interrogatories of the type here presented in a case as simple as the present one and involving so small a sum of money cannot be justified.

The way lies open, if necessary, for plaintiff to take depositions of defendant, which defendant's counsel in his brief has agreed to stipulate for.

Now, November 20, 1963, the interrogatories filed by plaintiff are found to involve unreasonable annoyance, expense and oppression to defendant and to require the making of unreasonable investigations by him. Under the circumstances of the case the objections of defendant are sustained.